## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **THE ESTATE OF GRETA COX**, | Case No._____ |
| by and through its duly appointed Personal | |
| Representative and Special Administrator, | |
| **ROBERT COX** | District Judge:_____ |
| | |
| and | |
| | |
| **ROBERT COX**, individually, | |
| | |
| and | |
| | |
| **ROBERT BRION RAGLAND,** | |
| | |
|         Plaintiffs, | |
| | |
| v. | |
| | |
| **TOTAL QUALITY LOGISTICS, INC.** | |
| an Ohio Corporation, | |

             **SERVE:    Brent Willis, Registered Agent**
                   4017 Washington Avenue
                   Lorain, OH 44052

and

**TOTAL QUALITY LOGISTICS, LLC,**
an Ohio Limited Liability Company,
             **SERVE**:    **KMK Service Corp.**
                   One East Fourth Street, Suite 1400
                   Cincinnati, OH 45245

        Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiffs bring this action alleging negligence against Defendants, Total Quality Logistics,

Inc. and Total Quality Logistics, LLC, and seek damages under the Ohio Wrongful Death Act,

R.C. § 2125.01 *et seq*, for the injuries, mental anguish, conscious pain and suffering, and death of

Greta Cox; loss of consortium and companionship for Robert Cox and her next of kin; and for personal injuries to Robert Brion Ragland. This lawsuit stems from Total Quality Logistics, Inc. and Total Quality Logistics, LLC's negligent hiring, selection, instruction, training, supervision, and retention of its driver, Amarjit Khaira, and, in the alternative, negligent selection of an incompetent carrier contractor to transport a load, resulting in a horrific, violent, and fatal semi-truck collision.

## PARTIES AND JURISDICTION

1.      The Estate of Greta Cox has been duly opened in Bernalillo County, New Mexico, and Robert Cox has been appointed as Personal Representative and Special Administrator.

2.      Robert Cox is the surviving spouse and heir of Greta Cox, deceased, and he resides in Bernalillo County, New Mexico. Robert and Greta have 2 adult children.

3.      Robert Brion ("Brion") Ragland is the adult grandson of Greta Cox, and he resides in Bernalillo County, New Mexico.

4.      Defendant, Total Quality Logistics, Inc., is an Ohio corporation with its principal place of business in the State of Ohio. It may be served via its registered agent, Brent Willis, 4017 Washington Ave., Lorain, OH 44052.

5.      Defendant Total Quality Logistics, LLC is an Ohio limited liability company with its principal place of business at 4289 Ivy Pointe Boulevard, Cincinnati, Ohio 45245. It may be served by its registered agent, KMK Service Corp., One East Fourth St., Suite 1400, Cincinnati, Ohio 45202.

6.      Defendant, Total Quality Logistics, Inc., and Defendant, Total Quality Logistics, LLC, collectively represent themselves as a broker licensed by the Federal Motor Carrier Safety Administration in Docket No. MC-322572 B.

7.     The violent collision occurred in Washita County, Oklahoma.

8.     Jurisdiction is proper, as the Plaintiffs are residents of a different state than each of the Defendants, and Plaintiffs' claimed damages are well in excess of the minimum diversity jurisdiction limits of this Court.

9.     Venue is proper in this Court as TQL's negligence giving rise to this complaint occurred in the Southern District of Ohio and TQL's principal place of business is in the Southern District of Ohio.

## ALLEGATIONS

10.     On or about May 6, 2019, TQL contracted with Kraft Heinz to transport a load of dry goods load from Minooka, Illinois to Perris, California.

11.     Based on information and belief, TQL negotiated and entered into a Bill of Lading contract, Bill of Lading # 2045983850 (hereinafter, "the Bill of Lading") with Kraft Heinz in Cincinnati, Ohio.

12.     As noted above, TQL is a registered broker who works with shippers to find authorized motor carriers to transports goods via tractor-trailers throughout the United States.

13.     However, based on information and belief, instead of serving as a broker with Kraft Heinz, TQL held itself out as an authorized motor carrier.

14.     Specifically, on or about May 6, 2019, TQL identified itself as an authorized motor carrier on the Bill of Lading and signed the Bill of Lading as an authorized motor carrier to transport the goods identified therein from Minooka, Illinois to Perris, California.

15.     As a result, based on information and belief, TQL entered a legally binding contract to provide transportation services as an authorized motor carrier.

16.     TQL then selected Golden Transit Inc. to transport the load from Minooka, Illinois to Perris, California.

17.     Based on information and belief, TQL employee Jacob Patterson, a Senior Enterprise Account Manager residing in Cincinnati, Ohio, negotiated and brokered the transport of the load with Golden Transit in Cincinnati, Ohio.

18.     Based on information and belief, TQL provided Golden Transit with the load details, including pick-up number, shipper name/address, and driver information sheet while in Cincinnati, Ohio.

19.     Based on information and belief, TQL, from its facility in Cincinnati, Ohio, approved Golden Transit to begin driving towards the pick-up location and directed, controlled, and monitored the transport of the load through interstate commerce.

20.     At all relevant times, Golden Transit was an unsafe, incompetent motor carrier with a history of publicly available red flags.  Specifically, Golden Transit, at all relevant times, had a history of safety violations, including an overwhelming number of its drivers being deemed illegal to be on the road.  Moreover, Golden Transit had been cited numerous times for hours-of-service violations and false logbooks, and their percentage of driver out-of-service violations was five times that of the national average.

21.     At all relevant times, Golden Transit's unsafe driving record was readily and publicly available on the Federal Motor Carrier Safety Administration's website, which has a Safety Measurement System (SMS) that tracks and rates motor carriers' safety performance. Golden Transit's SMS profile contained numerous on-road safety violations and deficiencies.  In fact, during the year before the crash, Golden Transit's publicly available safety rating was so bad that more than 7 out of every 10 of its trucks were not allowed to legally be on the roadway.

4

22.     TQL, in its capacity as a broker, had a duty to properly screen motor carriers it utilized to transport loads, including Golden Transit, and a duty to investigate each carrier's safety record. At a minimum, TQL had a duty to check the SMS profile and general safety statistics of its motor carriers, including Golden Transit, and to review any internal records of the safety performance of motor carriers it did business with or that it considered doing business with.

23.     TQL either failed to properly evaluate Golden Transit or disregarded Golden Transit's egregious safety record when it brokered with Golden Transit to transport the load.

24.     The load left Minooka, Illinois on May 7, 2019, and was scheduled to be delivered on May 11, 2019, but the load did not arrive.

25.     Amarjit Singh Khaira (hereinafter "the Driver") was the Driver of the truck and trailer at issue.   Based on information and belief, Mr. Khaira was an inexperienced and unsafe commercial truck driver.

26.     Based on information and belief, because TQL signed the Bill of Lading as a motor carrier, Mr. Khaira, at all relevant times, was the employee of both TQL and Golden Transit.

27.     Unaware that TQL had recklessly and wantonly disregarded the lives and the safety of the travelling public by hiring an unsafe driver and, in the alternative, brokering a load to an unsafe carrier, decedent Greta Cox started the day, May 8, 2019, enjoying a drive with her grandson, Brion Ragland, through the State of Oklahoma.

28.     Greta and Brion, as grandmother and grandson, had looked forward to and were enjoying a memorable road trip across several states following Brion's completion of his freshman year at college.

29.     As Brion napped in the front passenger seat on May 8 2019, Greta drove west through Washita County, Oklahoma on Interstate 40.

5

30.     The sky was cloudy but without rain and was wonderful driving weather.

31.     Greta approached a construction work zone on Interstate 40 near mile marker 48. The construction work zone was well-marked and had signage to notify drivers of the work zone.

32.     The construction work had caused the left or inner lane of that portion of Interstate 40 to be closed, and all traffic was directed to move to the right, outer lane, with a reduced speed limit.

33.     Greta was in the right lane, safely, legally, and carefully observing the obviously congested, slow, or stopped westbound traffic conditions caused by the construction work and adjusting her driving accordingly.

34.     Indeed, directly in front of her, a C.R. England semi-truck slowed to nearly a complete stop.

35.     Greta likewise slowed down to a walking pace behind the C.R. England semi-truck.

36.     Then, at approximately 2:56 p.m., Greta realized her life was about to end.

37.     In her rear-view mirror, Greta saw a large semi-truck speeding toward her.

38.     In a desperate attempt to survive, Greta slammed on the accelerator and sharply turned the steering wheel trying to get out of the way. But there was no escape.

39.     The Driver of the semi-truck smashed, with incredible force and at a speed of more than 60 mph, into Greta's vehicle.

40.     The Driver of the semi-truck did not attempt to brake or slow down before the semi-truck crashed into Greta's vehicle.

41.     The car was crushed to less than half of its true size, then forced out toward the right side of the Interstate.

42.     The semi-truck continued forward and rammed the right side of the C.R. England truck, drove into an embankment, flipped on its passenger side, and finally came to a stop.

43.     The Driver of the semi-truck was unlawfully speeding in a construction zone and inexplicably failed to recognize that the flow of traffic had stopped or nearly stopped.

44.     As a consequence of the collision that is the subject of this case, the Driver of the semi-truck was subsequently indicted for vehicular manslaughter, a felony, which is pending in the State of Oklahoma. *See State of Oklahoma v. Amarjit Khaira*, District Court of Washita County, CF-2020-00053.

45.     As a direct result and proximate cause of TQL's negligence, Greta Cox suffered traumatic injury and conscious pain and suffering of both mind and body in the collision and likely knew that her injuries were fatal. Although witnesses and emergency personnel tried desperately to save her, Greta died on the highway hundreds of miles from her husband.

46.     As a direct result and proximate cause of TQL's negligence, Greta Cox's was killed, resulting in damages in accordance with the Ohio Wrongful Death Statute, R.C. 2125, *et seq.*, to the Estate of Greta Cox and beneficiaries thereof, including husband Robert Cox and her next of kin, including, but not limited to:

    a.  mental anguish incurred by Robert Cox and Greta Cox's next of kin;

    b.  loss of support;

    c.  loss of services of the decedent; and

    d.  loss of society, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by Robert Cox and Greta Cox's next of kin.

47.     As a direct result and proximate cause of TQL's negligence, Plaintiff, Robert Brion Ragland, has incurred temporary and permanent injuries; has endured great pain and suffering of both mind and body and will continue to endure such pain and suffering in the future; has incurred medical expenses in an undetermined amount and will continue to incur medical expenses in the future; has incurred lost wages in an undetermined amount and will continue to incur lost wages in the future; has suffered damages for the lost enjoyment of life and lost the ability to perform usual activities, resulting in a diminished quality of life.

## FIRST CAUSE OF ACTION
*Negligence of TQL as a motor carrier*

48.     The allegations contained in the preceding paragraphs are adopted by reference and re-alleged as if fully set forth herein.

49.     As outlined above, TQL held itself out as a motor carrier to transport a load from Minooka, Illinois to Perris, California and, based on information and belief, is subject to liability as a motor carrier.

50.     Based on information and belief, at all relevant times, Amarjit Khaira was an employee of TQL pursuant to 49 C.F.R. § 390.5.

51.     Defendant, TQL, acting as a motor carrier, had a duty to act reasonably in hiring, selecting, instructing, training, supervising, and retaining its drivers and other employees and agents, including Amarjit Khaira, and to promulgate and enforce policies, procedures, and rules to ensure that its drivers were reasonably safe.

52.     Defendant, TQL, had a duty to exercise reasonable care to only allow competent and qualified drivers to carry goods on its behalf in interstate commerce.

8

53. Based on information and belief, Defendant, TQL, failed in the above-mentioned duties and was therefore negligent.

54. Defendant, TQL's negligence was the direct and proximate cause of Decedent Greta Cox's pain and suffering and wrongful death as described above in this Complaint.

55. Defendant, TQL's negligence was the direct and proximate cause of the Estate of Greta Cox's wrongful death damages as described above in this complaint.

56. Defendant, TQL's negligence was the direct and proximate cause of Robert Brion Ragland's damages as described above in this Complaint.

**SECOND CAUSE OF ACTION**
*Statutory Violations of Defendant TQL as a motor carrier*

57. The allegations contained in the preceding paragraphs are adopted by reference and re-alleged as if fully set forth herein.

58. Defendant, TQL, to the extent that it was acting as a motor carrier, violated state and federal statutes and regulations, including but not limited to 49 C.F.R. §§ 350-399 and O.A.C. 4901:2-5-02 through 4901:2-5-08. These regulations were promulgated to protect the safety of a class of people that includes decedent, Greta Cox, and Plaintiff, Robert Brion Ragland. Specifically, based on information and belief, Defendant, TQL, breached the above-mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

   a. Failing to verify and ensure that Amarjit Khaira operated the semi-trailer in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles, in violation of 49 C.F.R. §392.1;

   b. Failing to properly train and instruct Amarjit Khaira on defensive driving, safe driving, and keeping a proper lookout, in violation of 49 C.F.R. §383.111;

    c.   Failing to properly supervise Amarjit Khaira and identify dangerous routes and driving behavior that could have been corrected to avoid this crash; and

    d.   Knowingly failing to promote and enforce systems and procedures for the safe operation of commercial motor vehicles and, thus, creating a zone and culture of risk that constituted a dangerous mode of operation reasonably anticipated to cause injury and/or death to the traveling public, including decedent, Greta Cox and Plaintiff, Robert Brion Ragland.

59.    Defendant, TQL's statutory violations were the direct and proximate cause of Decedent Greta Cox's pain and suffering and wrongful death as described above in this complaint.

60.    Defendant, TQL's statutory violations were the direct and proximate cause of the Estate of Greta Cox's wrongful death damages as described above in this complaint.

61.    Defendant, TQL's statutory violations were the direct and proximate cause of Plaintiff, Robert Brion Ragland's damages as described above in this Complaint.

62.    Defendant, TQL, is negligent *per se* based on these statutory and regulatory violations.

## THIRD CAUSE OF ACTION
*Negligence of TQL as a Broker*

63.    The allegations contained in the preceding paragraphs are incorporated by reference and re-alleged as if fully set forth herein.

64.    TQL is regularly engaged in the business of shipping, brokering, and logistics.

65.    TQL, in its capacity as a broker, had a duty to select a competent contractor to transport the load.

66. TQL, in its capacity as a broker, had a duty to properly screen motor carriers it utilized to transport loads, including Golden Transit, and a duty to investigate the carrier's safety record. At a minimum, TQL had a duty to check each carrier's SMS profile and general safety statistics of the motor carriers, including Golden Transit, that it works with or considers working with, and to review any internal records of such carriers' safety performance before brokering the load.

67. TQL failed to properly evaluate Golden Transit and/or disregarded Golden Transit's egregious safety record when it brokered with Golden Transit to transport the load.

68. Operating a tractor trailer of the size and weight of the load involved in this collision involves a grave risk of serious physical injury or death to others unless it is skillfully and carefully done.

69. TQL breached these duties by retaining incompetent, unfit, or inexperienced contractors or sub-haulers to arrange and/or take this load.

70. Defendant, TQL's negligence in brokering the load was the direct and proximate cause of decedent, Greta Cox's pain and suffering and wrongful death as described above in this Complaint.

71. Defendant, TQL's negligence in brokering the load was the direct and proximate cause of the Estate of Greta Cox's wrongful death damages as described above in this Complaint.

72. Defendant, TQL's negligence in brokering the load was the direct and proximate cause of Plaintiff, Robert Brion Ragland's damages as described above in this Complaint.

**FOURTH CAUSE OF ACTION**
*Claim for Punitive Damages against TQL*

73. The allegations contained in the preceding paragraphs are incorporated by reference and re-alleged as if fully set forth herein.

74.    Defendant, TQL's actions demonstrate a conscious disregard for the rights and safety of decedent, Greta Cox, and Plaintiff, Robert Brion Ragland, and the rest of the motoring public, acting with reckless indifference to the consequences to others despite being aware of its conduct, and knowing there was a great probability of causing substantial harm.

75.    Accordingly, Plaintiffs, Robert Cox, individually and as the Personal Representative and Special Administrator of the Estate of Greta Cox, and Robert Brion Ragland, demand punitive damage against TQL.

WHEREFORE, Plaintiffs pray that this Court, after a trial by jury, award Plaintiffs:

a.    Damages in an amount that is just and fair and in excess of Seventy-Five Thousand Dollars ($75,000.00) (exclusive of costs and interest);

b.    Punitive damages;

c.    Pre- and post-judgment interest;

d.    Attorney's fees and costs; and

e.    Any and all other relief the Court may deem proper.

Respectfully Submitted,

W. Matthew Nakajima (0084563)
Charlie M. Rittgers (0086567)
Justin A. Sanders (0087157)
Gus J. Lazares (0092206)
**Rittgers & Rittgers**
12 East Warren Street
Lebanon, OH 45036
Tel: 513-932-2115
Fax: 513-934-2201
Email: matt@rittgers.com
        charlie@rittgers.com
        justin@rittgers.com
        gus@rittgers.com

12

and

Christopher T. Saucedo (*pro hac vice* pending)
**SaucedoChavez, P.C.**
800 Lomas NW, Suite 200
Albuquerque, NM 87102
Tel: (505) 338-3945
Email: csaucedo@saucedochavez.com
*Attorneys for Plaintiffs*