UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| COX, *et al.*, | : | Case No. 1:22-cv-00026 |
| *Plaintiffs*, | : | |
| vs. | : | Judge Jeffery P. Hopkins |
| TOTAL QUALITY LOGISTICS, INC., *et al.*, | : | |
| *Defendants*. | : | |

## OPINION AND ORDER

This case concerns the transportation of a condiment company's goods that resulted in a fatal automobile accident. On May 6, 2019, Defendants Total Quality Logistics, Inc., and Total Quality Logistics, LLC (together, "TQL") contracted with Kraft Heinz to transport a load of goods from Illinois to California. TQL, as a registered broker who works with trucking companies to transport goods, entered into an agreement with Golden Transit Inc. ("Golden Transit"), a third-party carrier, to pick up the goods and transport them to California.

Around the same time, Greta Cox (the "Decedent") was on a trip across the country with her grandson, Plaintiff Robert Brion Ragland ("Mr. Ragland"). On May 8, 2019, the Decedent was tragically killed when her car was hit from behind by a tractor-trailer driven by third-party Amarjit Singh Khaira ("Mr. Khaira") while under the employment of Golden Transit. Mr. Ragland survived the accident with injuries.

Plaintiffs Estate of Greta Cox, Robert Cox, and Mr. Ragland (collectively, "Plaintiffs") have now brought a lawsuit against TQL alleging negligent hiring and supervision of Golden Transit and Mr. Khaira. As explained below, the Court finds that Plaintiffs' negligent hiring claim is preempted by 49 U.S.C. § 14501(c)(1) of the Federal Aviation Administration

Authorization Act of 1994 ("FAAAA"). Accordingly, the Court **GRANTS** TQL's Motion to Dismiss (Doc. 6) and **DISMISSES** Plaintiffs' Complaint (Doc. 1) **WITH PREJUDICE**. The Court further **DENIES** the two pending Motions for Leave to File Supplemental Authority (Docs. 14, 23) as **MOOT**.

I. BACKGROUND

TQL is a registered broker that works with shippers to find authorized motor carriers to transport goods throughout the United States. Doc. 1, ¶ 12.[1] On May 6, 2019, TQL contracted with Kraft Heinz to transport a load of goods from Illinois to California. *Id.* at ¶ 14. TQL subsequently negotiated with Golden Transit to transport the goods across the country. *Id.* at ¶ 16. Plaintiffs allege that TQL ignored a "history of publicly available red flags" when vetting Golden Transit, which include a history of safety violations. *Id.* at ¶¶ 20–21. Despite these alleged red flags, Golden Transit was hired and assigned a driver, Mr. Khaira, to pick up the load on May 7, 2019, and deliver it by May 11, 2019. *Id.* at ¶¶ 24–25.

Around that same time, the Decedent and Mr. Ragland were engaged in a cross-country trip. *Id.* at ¶ 28. On May 8, 2019, the Decedent was driving across Oklahoma with Mr. Ragland in the passenger seat. *Id.* at ¶ 29. As the two approached a construction work zone, traffic became congested, and Decedent slowed their vehicle to a glacial pace. *Id.* at ¶ 33. Contemporaneously, a semi-truck, driven by Mr. Khaira, failed to recognize the flow of

---

[1] The Court notes that Plaintiffs believe that TQL served as an "authorized motor carrier" concerning the transportation of goods in this case. Doc. 1, ¶¶ 13–15. While Plaintiffs did not attach the relevant contract to their Complaint, TQL attached it to their motion to dismiss. Doc. 6-2. The contract clearly states that TQL served as a "BROKER" and Golden Transit served as the "CARRIER." Doc. 6-2, PageID 137. Because Plaintiffs' allegation is contradicted by the contract, "the [contract] trumps the allegation." *Gulfside Casino P'ship v. Churchill Downs Inc.*, 861 F. App'x 39, 42 (6th Cir. 2021).

traffic had slowed and crashed into Decedent's vehicle. *Id.* at ¶¶ 39–45. The Decedent died from the crash and Mr. Ragland sustained injuries. *Id.* at ¶¶ 46–47.

Plaintiffs sued Golden Transit and Mr. Khaira in Oklahoma for negligence related to the accident. *See Estate of Greta Cox, et al. v. Golden Transit, Inc., et al.*, No. 5:19-cv-01049 (W.D. Okla.).[2] Plaintiffs dismissed the Oklahoma lawsuit after a settlement. *Id.*; Doc. 6-5.

Plaintiffs have now brought a lawsuit against TQL alleging three different counts of negligent hiring and supervision of Golden Transit and Mr. Khaira. Doc. 1. TQL has subsequently moved to dismiss the Complaint. Doc. 6.

## II. STANDARD OF REVIEW

TQL seeks to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). Under Fed. R. 12(b)(6), a plaintiff must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar* Ass'n, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [the plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that assessment, the Court must similarly "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is true, however, only as to factual allegations. The Court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*,

---

[2] The court may take a judicial notice of Plaintiffs' prior lawsuit and subsequent dismissal with prejudice against Golden Transit and Mr. Khaira. *Lyons v. Stovall*, 188 F.3d 327, 322 n.3 (6th Cir. 1999) ("[I]t is well-settled that '[f]ederal courts may take judicial notice of proceedings in other courts of record.'").

3

556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47. Under the *Twombly/Iqbal* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

### III. LAW AND ANALYSIS

TQL argues that Plaintiffs' negligent hiring claims should be dismissed for three reasons. The Court finds one of those reasons dispositive. Specifically, TQL argues, in part, that Plaintiffs' negligent hiring claims are preempted by 49 U.S.C. § 14501(c)(1) of the FAAAA. The Court agrees.

#### A. Federal Preemption.

Federal preemption doctrine owes its existence to the Supremacy Clause of the United States Constitution, which obligates that "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. In short, the Supremacy Clause precludes courts from giving effect to state laws that conflict with federal laws. *See State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 341–42 (6th Cir. 2008).

The Sixth Circuit has identified three different types of federal preemption:

(1) express preemption, which occurs when Congress expresses an intent to preempt state law in the language of the statute; (2) field preemption, where Congress intends

fully to occupy a field of regulation; and (3) conflict preemption, where it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425 (6th Cir. 2000) (internal quotation marks omitted). Given that the language FAAAA expressly bars states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service" of any motor or air carrier, 49 U.S.C. § 14501(c)(1), this case concerns express preemption. *See Solo v. UPS Co.*, 819 F.3d 788, 797 (6th Cir. 2016). The Court must look at the history, language, and structure of the FAAAA to determine whether Plaintiffs' state law claims fall within the FAAAA's express prohibitions and, if so, whether any exception saves the claims from preemption.

B. **The FAAAA Bars Plaintiffs' Claims.**

In 1978, Congress initially began its effort to deregulate interstate transportation industries with a focus on deregulating domestic air travel. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 255–56 (2013). In 1994, Congress followed that effort up when it enacted the FAAAA as part of a greater push to deregulate interstate transportation industries. *Id.* at 569 U.S. 256. The FAAAA signified Congress's change in attention to the trucking industry. Congress enacted the legislation in part because it found "that state governance of intrastate transportation of property had become 'unreasonably burden[some]' to 'free trade, interstate commerce, and American consumers.'" *Id.* at 256 (alteration in original) (quoting *City of Columbus v. Ours Garage & Wrecker Service, Inc.*, 536 U.S. 424, 440 (2002)). The FAAAA includes several provisions barring such unreasonably burdensome state regulations. *See, e.g.*, 49 U.S.C. § 14501(a)(1), (b)(1), (c)(1).

The relevant preemptive language lies in 49 U.S.C. § 14501(c)(1), which governs "Motor Carriers of Property." The provision provides that a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Several exceptions follow, including the so-called safety exception in 49 U.S.C. § 14501(c)(2)(A). Under this exception, any express preemption from § 14501(c)(1) shall not:

> restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c)(2)(A).

A comprehensive view of the FAAAA's structure illustrates a tug-of-war between its broad prohibition of certain state laws and its narrow exceptions. Specifically, "Congress broadly disallowed state laws that impede its deregulatory goals," in the market for motor carriers, brokers, freight forwarders, and the like, with § 14501(c)(1). *Ye v. GlobalTranz Enters.*, 74 F.4th 453, 458 (7th Cir. 2023). And then made specific carve-out laws within a state's "safety regulatory authority . . . with respect to motor vehicles," even though such laws may burden interstate commerce, with § 14501(c)(2)(A). *Id.* (citing *Ours Garage*, 536 U.S. at 441). It thus follows that to solve the issue of preemption here, the Court must make two determinations.

First, do Plaintiffs' negligent hiring claims fall within 49 U.S.C. § 14501(c)(1)? The Court finds that common law tort claims, such as negligent hiring, fit within the text of § 14501(c)(1). Namely, the Court finds such claims fall within § 14501(c)(1)'s

6

express prohibition on the enforcement of state laws "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

Second, do the claims fit in 49 U.S.C. § 14501(c)(2)(A)'s safety exception? If not, Plaintiffs' claims are preempted. The Court ultimately finds that Plaintiffs' claims are preempted because a common law negligence claim enforced against a broker is not a law that is "with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). Plaintiffs' claims therefore fail as a matter of law.

The Court will further address each of the issues presented in turn.

        i.      **Common Law Tort Claims, Like Negligent Hiring Claims, Fall Within the Language of the FAAAA.**

TQL argues that Plaintiffs' negligent hiring claims fall within § 14501(c)(1)'s express prohibition on the enforcement of state laws "related to a . . . service of any . . . broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Plaintiffs argue in the alternative. The Court agrees with TQL.

The Court must begin with the FAAA's text, "which necessarily contains the best evidence of Congress' pre-emptive intent." *Dan's City Used Cars*, 569 U.S. at 260. Specifically, the Court looks at the language that prohibits state laws that are "related to" broker services. In the preemption context, the Supreme Court instructs that "related to" or "relating to" has a "broad preemptive purpose." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (interpreting an identical provision of the Airline Deregulation Act); *see also Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370-71 (2008) (explaining that interpretations of the Airline Deregulation Act directly apply to the Federal Aviation Administration Authorization Act). Thus, to be "related to" broker services under § 14501(c)(1), the state law in question need only have a "connection with, or reference to"

7

broker services. *Rowe*, 552 U.S. at 370 (emphasis removed) (quoting *Morales*, 504 U.S. at 384). While a state law may be preempted even if the law's effect on broker services "is only indirect," such indirect effects still require a clear, articulable connection because the FAAAA cannot preempt state laws that impact broker services in only a "tenuous, remote, or peripheral" manner. *Id.* at 370–71 (quoting *Morales*, 504 U.S. at 386, 390).

The Sixth Circuit has not decided whether the FAAAA's preemption clause applies to state law tort claims. However, this Court finds the Supreme Court's determinations in *Morales* and *Rowe* instructive. In *Morales*, the Supreme Court made four holdings regarding interpretation of an identical preemption provision in the Airline Deregulation Act of 1978 ("ADA"):

> (1) that state enforcement actions having a connection with, or reference to, carrier rates, routes, or services are pre-empted; (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives.

*Lee v. Werner Enters., Inc.*, No. 3:22 CV 91, 2022 WL 16695207, at *3 (N.D. Ohio Nov. 3, 2022) (quoting *Morales*, 504 U.S. at 384–87) (cleaned up). Then several years later, the Supreme Court held the same rulings apply to the preemption provision of the FAAAA in *Rowe*:

> In *Morales*, this Court interpreted the pre-emption provision in the Airline Deregulation Act of 1978. And we follow *Morales* in interpreting similar language in the 1994 Act before us here. We have said that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."

*Rowe*, 552 U.S. at 370.

8

The Seventh Circuit—the most recent federal appellate circuit to rule on this issue—has interpreted *Morales* and *Rowe* to embrace a two-part test that requires the party seeking preemption to show both that a state: (1) enacted or attempted to enforce a state law; and (2) that state law relates to prohibitions of the preemptive provision, either by expressly referring to them or by having a significant economic effect. *See GlobalTranz*, 74 F.4th at 458; *see also Headstream Techs., LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, at *2–3 (6th Cir. Feb. 1, 2023) (finding that state common law claims are preempted by the ADA's preemption requirement because the claims directly related to the defendant's services as an air carrier and affect pricing). In other words, if Plaintiffs' common law tort claims fall within the language of the § 14501(c)(1), the only question is whether the Ohio law underlying the claims expressly refers to, or has a significant economic impact on, broker services.

Regarding the first part, the Court finds *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, (2014) instructive. In construing the identical provision under the ADA, the Supreme Court found that "state common-law rules fall comfortably within the language of the ADA pre-emption provision." *Ginsberg*, 572 U.S. at 281–84 (holding "that the phrase 'other provision having the force and effect of law' includes common-law claims"). This Court follows the lead of the Supreme Court in *Ginsberg*, as well as the three Circuits to rule on this FAAAA issue and finds the same. *See GlobalTranz*, 74 F.4th at 459 ("[T]he first preemption requirement is easily met."); *Aspen Am. Ins. Co. v. Landstar Ranger*, Inc., 65 F.4th 1261, 1266 (11th Cir. 2023) ("[S]tate-law negligence claims seek to enforce a 'provision having the force and effect of law' subject to FAAAA preemption."); *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1025 (9th Cir. 2020) ("As an initial matter, there is no question that common-law claims are within the scope of the preemption clause.") (citing *Ginsberg*, 572 U.S. at 284).

9

Regarding the second part, the Court finds that nothing about either Ohio tort law or Plaintiffs' theory of negligent hiring expressly refer to broker services. Therefore, the Court must focus its inquiry on whether Plaintiffs' claims have a significant economic effect on broker services.

Plaintiffs allege that TQL engaged in "negligent hiring, selection, instruction, training, supervision, and retention" of Golden Transit and Mr. Khaira. Doc. 1, PageID 2. TQL offers services as a broker in the form of "selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (defining "broker"). As such, Plaintiffs' claims center on TQL's broker services by challenging the adequacy of care the company took—or failed to take—in hiring Golden Transit and Mr. Khaira to provide shipping services.

The enforcement of such a claim and the accompanying imposition of liability would have a significant economic effect on broker services. "By recognizing common-law negligence claims, courts would impose in the name of state law a new and clear duty of care on brokers, the breach of which would result in a monetary judgment." *GlobalTranz*, 74 F.4th at 459. This mode of enforcement is exactly what Plaintiffs seek. As the Seventh Circuit reasoned:

> To avoid these costly damages payouts, [TQL] and other brokers would change how they conduct their services—for instance, by incurring new costs to evaluate motor carriers. Then, by changing their hiring processes, brokers would likely hire different motor carriers than they would have otherwise hired without the state negligence standards. Indeed, that is the centerpiece of [Plaintiffs'] claim[s]: that [TQL] should not have hired [Golden Transit and Mr. Khaira].

*Id.* In sum, increasing the risk for brokers when hiring motor carriers—an essential part of their industry—has a significant economic impact on broker services because it increases the cost of doing business.

Based on the foregoing, Plaintiffs' negligent hiring claim has much more than a tenuous, remote, or peripheral relationship to broker services. The relationship is direct because subjecting a broker's hiring decisions to a common-law negligence standard would have significant economic effects. As such, Plaintiffs' claims are expressly preempted by § 14501(c)(1).

This conclusion is consistent with our sister court, the United States Court for the Northern District of Ohio, and the three circuit courts that have considered this issue. *See McCarter v. Ziyar Express, Inc.*, No. 3:21 CV 2390, 2023 WL 144844, at *3 (N.D. Ohio Jan. 10, 2023) (finding plaintiff's negligence claims are preempted by the FAAAA); *Lee*, 2022 WL 16695207, at *5 (same); *GlobalTranz*, 74 F.4th at 459 (finding that the plaintiff's negligent hiring claim directly relates to broker services and is expressly preempted by the FAAAA); *Miller*, 976 F.3d at 1024 ("[A] claim that imposes an obligation on brokers at the point at which they arrange for transportation by motor carrier has a 'connection with' broker services."); *Aspen*, 65 F.4th at 1267 ("[T]he [Act] makes plain that [the plaintiff's] negligence claims relate to a broker's services.").

  ii.  **Common Law Negligence Claims Enforced Against a Broker Do Not Fit Within the FAAAA's Safety Exception.**

Even if Plaintiffs' claims are preempted, the Court must consider whether it is saved by the safety exception in 49 U.S.C. § 14501(c)(2)(A). The safety exception provides that laws within a state's "safety regulatory authority . . . with respect to motor vehicles" are not preempted. 49 U.S.C. § 14501(c)(2)(A). Following the lead of the Seventh and Eleventh Circuits, the Court finds that the safety exception does not save Plaintiffs' negligent hiring claims from preemption. *See GlobalTranz*, 74 F.4th at 464 ("Ye's negligent hiring claim against GlobalTranz does not fall within the scope of § 14501(c)(2)'s safety exception."); *Aspen*, 65

F.4th at 1272 ("[N]egligence claims are not 'with respect to motor vehicles' under the FAAAA's safety exception.").

As before, the Court begins with the statutory text. Congress limited the safety exception's application to state laws "with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). The Supreme Court has interpreted "with respect to" to mean "concern[s]." *See Dan's City Used Cars*, 569 U.S. at 261. The scope of the exception is thus narrowed to those laws concerning "motor vehicles," which are defined as a "vehicle, machine, tractor, trailer, or semitrailer . . . used on a highway in transportation." 49 U.S.C. § 13102(16) (defining "motor vehicle"). Notably, there is no mention of "brokers" (like TQL) in the safety exception's text, or in Congress's definition of "motor vehicles." *Compare* 49 U.S.C. § 13102(2) (defining "broker") *with* 49 U.S.C. § 13102(16) (defining "motor vehicle"). The Court finds this omission to be significant because it indicates that Congress intended claims concerning brokers to be outside the scope of the safety exception. *See Dan's City Used Cars*, 569 U.S. at 261–62 (concluding that a state's law was not "with respect to transportation of property" under § 14501(c)(1) where it concerned post-towing storage, which does not constitute "transportation" as defined in § 13102(23)(B)).

The Court's finding is additionally supported by the structure of 49 U.S.C. § 14501(c). While Congress expressly included broker services in § 14501(c)(1)'s express preemption provision, Congress declined to include such a reference in 49 U.S.C. § 14501(c)(2)(A). Congress also expressly declined to include such reference in § 14501(c)(2)'s two other saving provisions for "intrastate transportation of household goods" and "tow truck operations." 49 U.S.C. § 14501(c)(2)(B)–(C). If Congress intended for brokers to be included in the safety exception it would have. Instead, Congress marked a line in the sand when it limited the

safety exception's application to state safety regulations related to "motor vehicles." So does this Court.

Plaintiffs argue that the Court should follow the Ninth Circuit's 2-1 decision in *Miller*, which found that the safety exception did apply to negligent hiring claims against brokers. *Miller*, 976 F.3d at 1030–31. The Court does not find *Miller*'s reasoning persuasive for a couple reasons.

First, *Miller* relied upon a presumption against preemption. *See id.* at 1021, 1027–28. However, the Supreme Court instructs that such a presumption does *not* apply where a "statute contains an express preemption clause," and requires courts to "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Commerce of United States of America v. Whiting*, 563 U.S. 582, 594 (2011)). The Court's decision thus focuses on the language of the safety exception which expressly does not include brokers or brokers services.

Second, the Ninth Circuit interpreted the "with respect to" language in § 14501(c)(2)(A) too broadly. The *Miller* court misread the Supreme Court's opinion in *Dan's City Used Cars* when it concluded that the safety exception's narrow "with respect to" language is "synonymous" with the more expansive language of "relating to." *Miller*, 976 F.3d at 1030. The Supreme Court went to great lengths to differentiate the two phrases when contrasting the ADA's air-carrier preemption provision with the FAAAA by stating that "the FAAAA formulation contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.' That phrase massively limits the scope of preemption ordered by the FAAAA." *Dan's City Used Cars*, 569 U.S. at 261 (quotations omitted). And "for

purposes of FAAAA preemption, it is ***not sufficient that a state law relates*** to the price, route or service of a motor carrier in any capacity," the addition of the words "***with respect to***" require the law to "also ***concern*** a motor carrier's transportation of property." *Id.* (emphasis added). In other words, the Supreme Court differed from the Ninth Circuit when it found that an interpretation of the FAAAA's "with respect to" language (included in the safety exception) should be interpreted in a more narrow and focused manner than "relates to."

The Court therefore finds that the Supreme Court's decision in *Dan's City Used Cars* instructs that "with respect to" more narrowly means "concerns" rather than the more inclusive "relate." *See id.; see also GlobalTranz*, 74 F.4th at 465 ("Given Congress's choice in § 14501(c)(1) to use 'relat[ed] to,' its use of 'with respect to' in § 14501(c)(2)(A) implies a different scope."). As a result, the phrase "with respect to motor vehicles" in the safety exception supports a narrower interpretation than the Ninth Circuit formulated in *Miller*. And that interpretation does not include brokers.

\* \* \* \*

Based on the foregoing and following the recent decisions by the Seventh Circuit, Eleventh Circuit, and the Northern District of Ohio, this Court finds the claims against TQL, the freight brokers in this case, are preempted by the FAAAA and must be dismissed.[3]

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion to Dismiss of TQL (Doc. 6) and **DISMISSES** Plaintiffs' Complaint (Doc. 1) **WITH PREJUDICE**. The Court further

---

[3] Plaintiffs' claim for punitive damages (Count IV) is a derivative claim that relies on the three negligent hiring claims to survive. *Grhama v. Am. Cynamid Co.*, 350 F.3d 496, 514–15 (6th Cir. 2003) (dismissing punitive damages claim because it is "derivative in nature" and must be dismissed if the primary cause of action does not survive). Because the Court dismisses Plaintiffs' negligent hiring claims (Counts I–III), their punitive damages claim must also be dismissed.

**DENIES** the two pending Motions for Leave to File Supplemental Authority (Docs. 14, 23) as **MOOT**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**SO ORDERED**

June 12, 2024

*Jeffery P. Hopkins*
Jeffery P. Hopkins
United States District Judge